# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

June 18, 2010

No. 09-40646

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

Plaintiff–Appellee,

v.

HELIODORO VELASQUEZ-TORREZ, also known as Andre Ramirez-Gomes,
also known as Heliodoro Velasquez-Torres,

Defendant–Appellant.

Appeal from the United States District Court
for the Southern District of Texas

Before JOLLY, SMITH, and OWEN, Circuit Judges.

PER CURIAM:

Heliodoro Velasquez-Torrez appeals his sentence imposed following conviction for illegal reentry by a deported alien. Velasquez-Torrez argues that the district court committed plain error when it enhanced his sentence based on a prior conviction and deportation. We affirm.

## I

Velasquez-Torrez, a Mexican national who had previously been deported, was apprehended by United States Border Patrol agents in 2009, near Freer, Texas. Because he lacked permission to be in the United States, Velasquez-Torrez was indicted for illegal reentry in violation of 8 U.S.C. § 1326(a) and (b). The indictment did not specifically identify the date of Velasquez-Torrez's

previous deportation.  It merely stated that he was an alien who had previously been removed from the United States and was unlawfully present in the United States without having first obtained the consent of the Attorney General of the United States or the Secretary of the Department of Homeland Security to apply for admission.

At rearraignment, the district court explained to Velasquez-Torrez the elements that the government was required to prove under § 1326.  Velasquez-Torrez affirmed that he understood the charge, had read it completely, and had discussed it completely with his attorney.  When asked whether Velasquez-Torrez had been convicted of any felonies, the prosecutor stated that Velasquez-Torrez had an "assault/family violence, third degree felony out of Harris County in April of '08."  The district court then informed Velasquez-Torrez that the felony could cause a 16-level increase in his base offense level, and Velasquez-Torrez declared that he understood.

The prosecutor summarized his evidence as follows:

> In the case of Mr. Velasquez, Your Honor, the United States can prove, through competent and legal witnesses, that on or about January the 21st, 2008 [sic], Mr. Velasquez was encountered by Border Patrol Agents near Freer, Texas.  United States can prove that he is an undocumented alien from the country of Mexico, who is illegally present in the United States.

> We can further prove that he was removed from the United States previously through Hidalgo, Texas, Port of Entry, on January the 23rd, 2004.  And we can prove that there is no record or evidence that Mr. Velasquez has applied for or received permission from the Attorney General of the United States or the Secretary of the Department of Homeland Security to re-enter the United States.

Although the prosecutor's statement that Velasquez-Torrez had been found near Freer, Texas on January 21, 2008, was incorrect because the date was actually

January 21, 2009, Velasquez-Torrez affirmed that he had heard the prosecutor's statement and that the statement was correct. The district court again asked if there was a prior felony, and the prosecutor stated that he could prove that Velasquez-Torrez was convicted on April 3, 2008, for assault/family violence.

Velasquez-Torrez pleaded guilty to illegally reentering the United States after he had been deported, and the district court accepted the plea. Before the date set for sentencing, the United States Probation Office prepared a Presentence Investigation Report (PSR). The PSR stated that Velasquez-Torrez had been deported to Mexico on two occasions: on January 23, 2004, and again on November 15, 2008, following his conviction for assault on a family member. The PSR assigned an initial base offense level of eight. Eight levels were added to the offense level because Velasquez-Torrez had been previously deported after a conviction for an aggravated felony. The PSR deducted three levels for acceptance of responsibility, giving Velasquez-Torrez a total offense level of thirteen. Considering his combined criminal history score and total offense level, the PSR calculated the guidelines range as thirty to thirty-seven months and recommended a sentence within that range. Although the statutory maximum for illegal reentry is two years' imprisonment pursuant to 8 U.S.C. § 1326(a), Velasquez-Torrez's prior conviction and subsequent removal raised the maximum to twenty years pursuant to 8 U.S.C. § 1326(b).

At his sentencing, Velasquez-Torrez affirmed that he had received and read the PSR. Through counsel, Velasquez-Torrez stated that there were no mistakes in the report, although he "remained silent on Paragraph 28," which contained a narrative discussing the facts of his prior assault conviction. The district court sentenced Velasquez-Torrez to thirty-seven months of imprisonment and three years of supervised release. Velasquez-Torrez now appeals, arguing that his 2008 removal was not proven beyond a reasonable

No. 09-40646

doubt in order to increase the statutory maximum sentence he could receive under 8 U.S.C. § 1326(b)(2).

## II

Because Velasquez-Torrez did not object to the use of his 2008 removal in the district court, we review his claim for plain error.[1]  Under this standard, Velasquez-Torrez must demonstrate that "(1) there is an error; (2) the error is clear or obvious, rather than subject to reasonable dispute; (3) the error affected [his] substantial rights, which in the ordinary case means it affected the outcome of the district court proceedings; and (4) the error seriously affect[s] the fairness, integrity or public reputation of judicial proceedings."[2]

## III

Under 8 U.S.C. § 1326(a), an alien who is guilty of illegal reentry into the United States may be sentenced to no more than two years of imprisonment. This statutory maximum, however, may be increased if the alien has been convicted of certain crimes.  Under § 1326(b)(2), an alien who has previously been removed subsequent to a conviction for an aggravated felony may be sentenced to up to twenty years of imprisonment.  In order for a defendant to receive this enhanced sentence, the government must prove that the removal occurred *after* the felony conviction.[3]  "[T]he fact of the deportation must be admitted or proven to a jury beyond a reasonable doubt."[4]  A court may not "rel[y] on a PSR to establish sentencing facts that increases [sic] the penalty

---

[1] *See United States v. Rojas-Luna*, 522 F.3d 502, 504 (5th Cir. 2008).

[2] *United States v. Marcus*, No. 08-1341, 2010 WL 2025203, at *3 (U.S. May 24, 2010) (internal quotation marks omitted).

[3] *See Rojas-Luna*, 522 F.3d at 505-06.

[4] *See United States v. Ramirez*, 557 F.3d 200, 203 (5th Cir. 2009) (citing *Rojas-Luna*, 522 F.3d 502).

beyond the statutory maximum."[5]   "However, reliance on a defendant's admission of facts that are contained in the PSR is permissible."[6]

Velasquez-Torrez argues that the district court erred when it enhanced his sentence under § 1326(b)(2).  He points out that the indictment did not mention any prior convictions or a specific date of removal.  At the rearraignment, the Government proffered as evidence a 2008 conviction and a 2004 removal.  As Velasquez-Torrez notes, the 2004 removal did not occur after the 2008 conviction.  His later 2008 removal, which did occur after the felony conviction, was first mentioned in the PSR.  Under *United States v. Rojas-Luna*, the district court may not rely on the PSR to establish that a defendant was removed subsequent to a conviction.[7]   Therefore, according to Velasquez-Torrez, the district court's reliance on his 2008 removal as a basis for enhancing his sentence was plain error.

Velasquez-Torrez's argument is unconvincing given this court's jurisprudence on the question of sentence enhancements, principally *Rojas-Luna*[8] and *United States v. Ramirez*.[9]   In *Rojas-Luna*, the defendant pleaded guilty to reentering the United States illegally.[10]   The factual basis for the charge was that Rojas-Luna had been deported in 1988 and had reentered the United States in 2006.[11]   No mention was made of a prior conviction.  The subsequent PSR, however, noted that Rojas-Luna was convicted of aggravated

---

[5] *Id.* at 204.

[6] *Id.*

[7] *See Rojas-Luna*, 522 F.3d 502.

[8] *Id.*

[9] *Ramirez*, 557 F.3d 200.

[10] *Rojas-Luna*, 522 F.3d at 503.

[11] *Id.*

assault in 2003 and was removed in 2006.[12]  Because Rojas-Luna had been convicted and subsequently removed, the district court enhanced his sentence under § 1326(b)(2).[13]  On appeal, we held that the district court's reliance on the 2006 removal, when this fact had not been proven to a jury or admitted by Rojas-Luna, was plain error.[14]

In *Ramirez*, we dealt with facts that differed slightly, but materially, and came to a different conclusion.[15]  Ramirez pleaded guilty to illegal reentry at his rearraignment.[16]  The indictment and factual basis for his plea did not specify the date of his removal.[17]  After his plea, the PSR reflected that Ramirez had been convicted of aggravated assault in 2003 and deported in 2005.[18]  Relying on the conviction and deportation mentioned in the PSR, the district court increased Ramirez's sentence beyond the statutory maximum contained in § 1326(a).[19]  On appeal, Ramirez argued that the district court's reliance on the 2005 removal was plain error under *Rojas-Luna*.[20]  We disagreed.[21]  We noted that, whereas in *Rojas-Luna* the defendant had not admitted to the relevant deportation, Ramirez and his counsel "affirmed specifically that they had read

---

[12] *Id.*

[13] *Id.*

[14] *Id.* at 506-07.

[15] *United States v. Ramirez*, 557 F.3d 200 (5th Cir. 2009).

[16] *Id.* at 202.

[17] *Id.* at 204.

[18] *Id.*

[19] *Id.* at 202-03.

[20] *Id.* at 203.  Ramirez raised the issue for the first time in a reply brief, but we exercised our discretion to address the merits of the argument.

[21] *Id.* at 205.

the PSR, reviewed it for legal and factual accuracy, and made no objections to it."[22] While reliance on a PSR alone to establish the fact of a defendant's removal is improper, "reliance on a defendant's admission of facts that are contained in the PSR is permissible."[23] Because Ramirez implicitly admitted the accuracy of the PSR, the district court did not plainly err in relying on the facts contained therein.[24]

In this case, the district court relied on Velasquez-Torrez's 2008 deportation to increase his sentence beyond the statutory maximum. While Velasquez-Torrez's 2008 deportation was not proven to a jury, it was described in the PSR. At his sentencing, Velasquez-Torrez stated that he had received and read the PSR. Beyond "remaining silent" on a section of the PSR discussing the facts of his prior assault conviction, Velasquez-Torrez through counsel affirmed that the PSR contained no mistakes. Just as in *Ramirez*, Velasquez-Torrez agreed to the accuracy of the PSR. Having admitted the fact of his deportation, Velasquez-Torrez cannot now argue that the district court improperly relied on that deportation. Therefore, the district court did not commit error, much less plain error, when it enhanced Velasquez-Torrez's sentence pursuant to § 1326(b)(2).

\*     \*     \*

For the foregoing reasons, the district court's judgment is AFFIRMED.

---

[22] *Id.* at 204.

[23] *Id.*

[24] *Id.* at 204-05.